TERRY W. SCHRAMM, Indiv. and as Special Adm'r of the Estate of Vinita L. Schramm, Deceased, and as Special Adm'r of the Estate of Tara R. Schramm, Deceased, *et al.*, Plaintiffs-Appellees, v. THE COUNTY OF MONROE *et al.*, Defendants-Appellees (The City of Waterloo *et al.*, Defendants-Appellants).

Fifth District   No. 5—00—0709

Opinion filed October 23, 2001.

James C. Cook and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellants.

Ronald A. Roth and Richard A. Tjepkema, both of Roth Law Offices, of Granite City, for appellee Mary E. Quinn.

Brad L. Badgley, of Belleville, for appellee Estate of Jamie A. Quinn.

No brief filed for other appellees.

JUSTICE KUEHN delivered the opinion of the court:

The City of Waterloo, Illinois (Waterloo), and Craig T. Inman appeal from the trial court's October 16, 2000, order finding that a settlement that had been reached among all the plaintiffs and Mary E. Quinn, administrator of the estate of Jamie A. Quinn (Quinn Estate), was made in good faith and that, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), there was no just reason for delaying either the enforcement or the appeal from that order. We affirm.

This case arose out of a tragic set of events that occurred on April 23, 1999, when Jamie A. Quinn, who apparently was suffering from some sort of an emotional problem, took a shotgun from his parents' home and departed without their permission in their motor vehicle. His parents reported the incident to police. Police approached the Monroe County State's Attorney for the issuance of juvenile warrants. Jamie A. Quinn ended up at a Waterloo movie theater. Police were alerted to his presence. Officer Inman, an employee of the Waterloo police department, arrived at the theater, located Jamie A. Quinn in his parents' motor vehicle, and activated his flashing lights and siren upon approaching the vehicle. Jamie A. Quinn immediately drove off and away from Officer Inman. Officer Inman radioed for assistance, and some sort of a roadblock was set up. Jamie A. Quinn eluded the roadblock and continued on in what became a high-speed pursuit by the police. At some point, Jamie A. Quinn pulled out into the opposing lane of traffic to pass another motorist, and in the process, he struck a vehicle head-on. That vehicle was operated by Tara R. Schramm and contained Vinita L. Schramm as a passenger, both of whom perished as a result of the collision. Jamie A. Quinn also died in the collision. A third vehicle was involved in the accident. This vehicle was traveling directly behind the vehicle operated by Tara R. Schramm. There were no fatalities in that vehicle, but the five Smith family occupants sustained bodily injuries.

Separate lawsuits were filed by the Schramm estates and the Smiths against the Quinn Estate, Waterloo, Inman, and others. Ultimately those suits were consolidated. The Quinn Estate filed a counterclaim against Waterloo and Monroe County for Jamie A. Quinn's wrongful death. Waterloo filed a counterclaim for contribution against the Quinn Estate.

Allstate Insurance Company (Allstate) apparently had a motor vehicle liability policy insuring Jamie A. Quinn's parents and the motor vehicle involved in this accident. Allstate, on behalf of the Quinn Estate, reached a settlement of the wrongful-death, survivor, and bodily injury claims in the full occurrence amount of its policy— $100,000. Allstate, on behalf of the Quinn Estate, sought a good-faith settlement finding that would discharge the Quinn Estate from any further liability from any claims which were pending at that time or which could later be filed against the estate and that would result in the prejudicial dismissal of such pending and/or future claims. Those claims would include not only the wrongful-death, survivor, and bodily injury claims but also any contribution claims. The wrongful-death lawsuit filed by the Quinn Estate would be unaffected by the good-faith settlement finding. The request for a good-faith settlement find-

ing did not contain a request that the trial court enter a finding under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

A hearing on the motion was held on August 23, 2000. At the conclusion of the hearing, the trial judge indicated that she was granting the request for a good-faith settlement finding. In ruling from the bench, the trial judge made no mention of a Rule 304(a) finding. A written order was prepared. The parties to the settlement all received and approved a copy of the order, but a copy was not sent to the attorney for Waterloo and Inman. This order was somehow presented to the trial judge, who signed it on October 6, 2000, but the order was not filed with the court until October 16, 2000, at which time the court sent copies to all parties of record. On that same date, an amended version of the motion for a good-faith finding was filed, and this version contained a request for a Rule 304(a) finding. A copy of the amended motion was not forwarded to the attorney for Waterloo and Inman. Waterloo and Inman appeal.

At oral argument, we learned that the Rule 304(a) finding came about when counsel for Waterloo and Inman suggested to the plaintiffs and the Quinn Estate at the August 23, 2000, hearing that they ought to procure such a finding.

From the transcript of the hearing on the good-faith finding, we know that the possibility of a Rule 304(a) finding was referenced. However, in her preliminary ruling from the bench, the trial judge indicated that she found the settlement to be in good faith. The trial judge did not indicate that she would enter a Rule 304(a) finding. Perhaps that is because the original motion for a good-faith finding did not seek a Rule 304(a) finding, or perhaps she simply did not find that it was necessary to specifically state her intent to enter that order. In any event, a Rule 304(a) finding was clearly contemplated by the parties. Additionally, the parties agreed that a written order of judgment would be distributed to all parties and that if anyone disagreed with the order, he or she could inform the trial court in writing of their objections within 10 days.

A written order was prepared and sent to the parties to the settlement for signature. This written order found that the settlement was made in good faith and also that, pursuant to Supreme Court Rule 304(a), there was no just cause for the delay of enforcement or appeal. The trial judge was presented with the order, and the order was signed on October 6, 2000. The order was not actually filed by the court until October 16, 2000. Upon that date, copies of the order were sent by the court to all parties of record—including Waterloo and Inman. Apparently contemporaneously, an amended motion for a good-faith finding, which attached copies of the settlement checks and releases and added

a request for a Rule 304(a) finding, was filed and sent to some of the attorneys of record but was not sent to the attorney for Waterloo and Inman.

Instead of objecting in the trial court, the attorney for Waterloo and Inman elected to file this appeal. The attorneys for the remaining defendants do not join in the appeal. In this appeal, counsel argues that the good-faith settlement finding was erroneous and that the Rule 304(a) finding was improvidently granted. However, initially, counsel contends that this court lacks jurisdiction over this matter on the theory that the Rule 304(a) finding is void as it was entered on an *ex parte* basis.

■ Before we begin our analysis, we find it necessary to discuss the manner in which this case came to our court. Counsel for Waterloo and Inman was obviously unhappy with the trial court's conclusion that the settlement was reasonable and reached in good faith. While the parties to the settlement were not seeking a Rule 304(a) finding, counsel for Waterloo and Inman took it upon himself to suggest to the other attorneys that they should ask the court for such a finding. Now he contends that the Rule 304(a) finding was not only improvidently granted but that it occurred on an *ex parte* basis. He intimates that he was not aware that such an order was contemplated. He further insinuates that the parties to the settlement agreement have done something ethically inappropriate. Despite counsel's claims to the contrary, we do not find that the parties conspired together in some insidious plot to prevent counsel from obtaining a copy of the written order confirming the judge's verbal order from the bench. To the extent that all parties were not in Judge Otis-Lewis's presence as she put her pen to the written order, then we suppose that one could label the occurrence as an *ex parte* one. However, such a gathering of the attorneys was never contemplated by the parties or the court. The judge simply asked that a written order be presented to her. While there was discussion about circulation of the written order, it appears that due to an administrative error, this did not occur. We find this whole process rather disingenuous on counsel's part since he was the very attorney who recommended that the Rule 304(a) finding be included. He could not have been surprised that the order contained the very Rule 304(a) finding that he recommended. Furthermore, it is not as if counsel never received a copy. He had no difficulty in filing this appeal. So, while we could send this case back to the trial court in order to allow counsel for Waterloo and Inman to have a copy of the written order prior to its entry, he would not be able to reargue to the trial court the primary issue that he raises in this appeal—that the good-faith settlement itself was improperly entered. We suspect that counsel would

turn around and appeal that order to this court again, which would certainly be contrary to our ongoing goal of judicial economy. Therefore, we address the merits of this appeal.

For the reasons stated, we do not find that the order was void for having been entered on what counsel labels an *"ex parte"* basis. Waterloo and Inman fail to prove that they have been in any way prejudiced or otherwise harmed by the entry of the Rule 304(a) finding, given the fact that their attorney suggested its entry. *Savage v. Pho*, 312 Ill. App. 3d 553, 557, 727 N.E.2d 1052, 1055 (2000).

We next turn to the issue of whether the settlement meets the good-faith requirement of section 2(c) of the Joint Tortfeasor Contribution Act (the Act) (740 ILCS 100/2(c) (West 1998)). Before we review the trial court's conclusion on the issue, we look at the provisions of the Act itself.

■ In situations where there are two or more people potentially liable for the same injury or wrongful death, those parties maintain a right of contribution among them. 740 ILCS 100/2(a) (West 1998). This contribution right exists only in favor of the tortfeasor who has paid more than its *pro rata* share of the damages to the injured party. 740 ILCS 100/2(b) (West 1998). However, no contribution can be obtained by or from any tortfeasor with whom the injured party has settled in good faith. So, after a settlement with the injured party, the settling tortfeasor can no longer recover contribution from any other nonsettling tortfeasor. 740 ILCS 100/2(e) (West 1998). Additionally, the settling tortfeasor's contribution liability to any other nonsettling tortfeasor is completely discharged. 740 ILCS 100/2(d) (West 1998).

■ The Act only requires that the parties' settlement be found by the trial court to have been in "good faith." That term is not defined by statute, but relevant cases have concluded that a determination of good faith must be made by the trial court after a consideration of the totality of the circumstances. *In re Guardianship of Babb*, 162 Ill. 2d 153, 161, 642 N.E.2d 1195, 1199 (1994). This approach allows the trial courts to give effect to a strong public policy that favors settlements but guards against unfair dealing, collusion, or other wrongful conduct on the part of the settling parties. *Babb*, 162 Ill. 2d at 162, 642 N.E.2d at 1199. A trial court's conclusion that a settlement was reached in good faith is a matter within the trial court's sound discretion and will not be reversed on appeal unless we determine that the trial court abused that discretion. *Babb*, 162 Ill. 2d at 162, 642 N.E.2d at 1199.

The argument advanced by Waterloo and Inman primarily relies upon two supreme court cases which concluded that the purported good-faith settlements at issue were not really made in good faith. We review each of these two cases.

In *In re Guardianship of Babb*, the settlement at issue was between Clifford Babb and the City of Champaign. *Babb*, 162 Ill. 2d at 155, 642 N.E.2d at 1196. Clifford Babb was employed by the City of Champaign and sustained a work-related injury that resulted in workers' compensation benefits totaling $2.4 million being paid to him and/or on his behalf. *Babb*, 162 Ill. 2d at 156, 642 N.E.2d at 1197. Apparently prior to the filing of a third-party lawsuit for his injuries, Clifford Babb and the City of Champaign reached a settlement in the amount of $400,000, with the settlement agreement releasing the City of Champaign from any secondary liability to third parties. *Babb*, 162 Ill. 2d at 156, 642 N.E.2d at 1197. Settlement approval was sought in a guardianship case. *Babb*, 162 Ill. 2d at 156, 642 N.E.2d at 1197. A party who was a potential defendant in Clifford Babb's contemplated civil suit received notice of the pending settlement approval and intervened in the case. *Babb*, 162 Ill. 2d at 156, 642 N.E.2d at 1197. The settlement agreement provided that of the $400,000, Clifford Babb could keep $50,000 of the $400,000 no matter what happened but that if he chose to pursue third-party litigation and successfully recovered any damages, he would pay back the remaining $350,000 to the City of Champaign. *Babb*, 162 Ill. 2d at 157, 642 N.E.2d at 1197. Additionally, the City of Champaign retained its right to recover the balance of its lien, up to 75% of the $2.4 million it paid in workers' compensation benefits. *Babb*, 162 Ill. 2d at 157, 642 N.E.2d at 1197. The agreement also required that Clifford Babb agree to waive the 25% attorney fee and costs that he would not normally be required to repay, which meant that the City of Champaign could potentially recover 100% of its lien. *Babb*, 162 Ill. 2d at 157, 642 N.E.2d at 1197. The probate court concluded that the settlement was reached in good faith for purposes of contribution. *Babb*, 162 Ill. 2d at 158, 642 N.E.2d at 1198. The appellate court affirmed. *In re Guardianship of Babb*, 232 Ill. App. 3d 40, 597 N.E.2d 198 (1992).

On appeal to the supreme court, the intervening parties who had been sued by Clifford Babb contended that the settlement could not have been made in good faith because of its incorporation of a loan-receipt agreement. *Babb*, 162 Ill. 2d at 160, 642 N.E.2d at 1198. The supreme court concluded that loan-receipt agreements cannot be considered good-faith settlements. *Babb*, 162 Ill. 2d at 171, 642 N.E.2d at 1204. Initially, the court noted that such an agreement would allow a settling tortfeasor to subvert the prohibition on recovering contribution from nonsettling tortfeasors by allowing the settling tortfeasor to indirectly obtain contribution from the nonsettling tortfeasor by way of the loan-payback provisions. *Babb*, 162 Ill. 2d at 172, 642 N.E.2d at 1204. Additionally, the court found that a loan-receipt agreement

violated the terms of the Act by attempting to deprive the nonsettling tortfeasors of their statutory right to a setoff. *Babb*, 162 Ill. 2d at 172-73, 642 N.E.2d at 1204. Because Clifford Babb would only actually get to keep the first $50,000 of the $400,000 settlement, the defendants would only be entitled to a $50,000 setoff and not the entire $400,000 amount. *Babb*, 162 Ill. 2d at 173, 642 N.E.2d at 1204. Depriving the nonsettling tortfeasors of the right to a setoff contravenes the terms of the Act. *Babb*, 162 Ill. 2d at 175, 642 N.E.2d at 1205. By depriving the nonsettling tortfeasors of their setoff rights, the loan-receipt agreement also defeats the purpose of the Act of equitably distributing the burden of compensating the injured plaintiff amongst all of the tortfeasors. *Babb*, 162 Ill. 2d at 175, 642 N.E.2d at 1205. By receiving a repayment of the loan, the City of Champaign would not equitably share in the burden of compensating Clifford Babb. *Babb*, 162 Ill. 2d at 175, 642 N.E.2d at 1205.

In *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d 185 (2001), the supreme court held that the settlements at issue were not in good faith because the settling defendants received assignments of the plaintiffs' causes of action against the nonsettling defendants. *Dubina*, 197 Ill. 2d at 187. An April 1989 fire in Chicago destroyed a building that housed several art galleries. *Dubina*, 197 Ill. 2d at 187. The property damage was extensive. *Dubina*, 197 Ill. 2d at 187. Thirty-five separate lawsuits involving the damage claims of 112 plaintiffs were brought. *Dubina*, 197 Ill. 2d at 187. Defendants to the suit included owners and managers of the building, general contractors who were performing renovations at the time of the fire, and the various subcontractors. *Dubina*, 197 Ill. 2d at 187. Eventually, the lawsuits were all consolidated for discovery and trial. *Dubina*, 197 Ill. 2d at 188. Some of the defendants reached settlements with some of the plaintiffs. *Dubina*, 197 Ill. 2d at 188. There were 29 separate settlement agreements, all of which required the plaintiffs to assign their claims against the two nonsettling defendants to some of the settling defendants. *Dubina*, 197 Ill. 2d at 188. The total amount paid in settlement was $4.5 million. *Dubina*, 197 Ill. 2d at 188. The settling defendants who received the assignments paid an additional $4.5 million for the assignments. *Dubina*, 197 Ill. 2d at 188. The trial court concluded that each of the settlement agreements was made in good faith. *Dubina*, 197 Ill. 2d at 189. The trial court thereafter entered the orders dismissing the plaintiffs' claims against the settling defendants and dismissing all of the defendants' contribution claims against one another. *Dubina*, 197 Ill. 2d at 189. The settling defendants substituted their attorneys for the plaintiffs' attorneys. *Dubina*, 197 Ill. 2d at 189. One of the nonsettling defendants appealed. *Dubina*, 197 Ill. 2d at

189. The appellate court reversed. *Dubina v. Mesirow Realty Development, Inc.*, 308 Ill. App. 3d 348, 719 N.E.2d 1084 (1999).

The supreme court noted that, generally speaking, an assignment of a cause of action for property damage is valid in Illinois. *Dubina*, 197 Ill. 2d at 194. However, it was necessary to look at the assignments in conjunction with the settlement agreements at issue. *Dubina*, 197 Ill. 2d at 194. The supreme court concluded that the settlement agreements violated the terms of the Act because they deprived the nonsettling tortfeasor of its statutory right to a setoff. *Dubina*, 197 Ill. 2d at 195. While $9 million was actually paid to the plaintiffs, only $4.5 million was available as a setoff because of the manner in which the settlement was structured with half of the amount designated as payment for the assignment. *Dubina*, 197 Ill. 2d at 195. The court stated that the fact that the settling defendants were willing to pay an additional $4.5 million for the assignments called into question whether the $4.5 million setoff would result in the nonsettling tortfeasor paying more than its *pro rata* share of the final damage judgment. *Dubina*, 197 Ill. 2d at 195. Furthermore, the court concluded that the Act's purpose of equitably distributing the burden of compensating an injured plaintiff was defeated by the assignment, because in theory the settling defendants could recover more than the total $4.5 million allowed setoff, resulting in a windfall. *Dubina*, 197 Ill. 2d at 196. Additionally, the settlement agreements and assignments violated the Act because they allowed the settling defendants to indirectly recover contribution from the nonsettling defendants—something clearly prohibited by the Act. *Dubina*, 197 Ill. 2d at 196.

In this case, the Quinn Estate—one of the tortfeasors—settled with all of the plaintiffs and sought to have the settlement declared to have been made in good faith. Waterloo and Inman, two of the remaining tortfeasors, objected under the theory that *Babb* and *Dubina* prohibit such a finding. Waterloo and Inman argue that the Quinn Estate's settlement, since the Quinn Estate remains in the case as a wrongful-death plaintiff with claims against the nonsettling defendants, could not possibly be in compliance with the Act.

■ The primary difference between the two cases cited and this case is the fact that in those two supreme court cases, any monies that the settling tortfeasors recovered were essentially in the form of contribution from the nonsettling tortfeasors. By way of the loan-receipt agreement or the assignment of claims, those settling tortfeasors were directly being paid back for the money they initially paid out. The Quinn Estate is not in any way going to be reimbursed in the form of contribution. In fact, the Quinn Estate would not be *reimbursed* at all. The Quinn Estate's claim is completely distinct in that it raises its

own wrongful-death claim. Consequently, the Quinn Estate is not seeking to indirectly obtain contribution from the nonsettling tortfeasors.

Additionally, Waterloo and Inman will receive the full benefit of the setoff of $100,000 if it is ultimately determined that they are liable to the plaintiffs. There is no extra amount of money paid out by the Quinn Estate that would preclude Waterloo and Inman from receiving the full and complete benefit of the setoff.

The Act's purpose of equitably distributing the burden of compensating the plaintiffs amongst all of the tortfeasors is also protected. The Quinn Estate paid $100,000, and that amount is included in the total dollar amount that those plaintiffs receive.

The case is no more complicated than that. Waterloo and Inman try to confuse the issue because the Quinn Estate has its own separate claim, but the issue is one of contribution—nothing more. The prohibition from *Babb* and *Dubina* does not relate to the settling tortfeasor's own claim. The prohibition exists to prevent settling tortfeasors from being able to recover the amount of money (or potentially more than the settlement amount) that the settling tortfeasor paid *in contribution* from the nonsettling tortfeasors. Allowing such a plan means that the settling tortfeasor, in essence, continues in the case and can recover contribution from the remaining nonsettling tortfeasors. The Act specifically prohibits a settling tortfeasor from recovering contribution. Allowing a settling tortfeasor to pursue its own claim for wrongful death does not involve contribution and is not prohibited by the Act.

Accordingly, we conclude that considering the totality of the circumstances, the trial court's finding that the Quinn Estate's settlement with the plaintiffs was in good faith does not constitute an abuse of the court's discretion.

■ We finally address the argument that the Rule 304(a) order was improvidently granted. Waterloo and Inman correctly state that a trial court's inclusion of Rule 304(a) language in an order does not automatically mean that the order is appropriate.

Waterloo and Inman cite cases that involve trial court orders that dismissed certain counts or portions of a complaint on the merits. In those situations, the appellate courts held that the orders were not final, although the Rule 304(a) language was included, because not all aspects of a particular branch of the controversy were concluded by that order. See *Elkins v. Huckelberry*, 276 Ill. App. 3d 1073, 659 N.E.2d 462 (1995); *Rice v. Burnley*, 230 Ill. App. 3d 987, 596 N.E.2d 105 (1992).

In this case, the settlement of the plaintiffs' claims against the

Quinn Estate resulted in the dismissal of those claims, as well as any claims made by the Quinn Estate for contribution or contribution claims made by remaining nonsettling defendants against the Quinn Estate. The dismissal entered by the trial court in its October 16, 2000, order was pursuant to the operation of law, as section 2(d) of the Act (740 ILCS 100/2(d) (West 1998)) requires such a dismissal upon a determination that the settlement at issue was reached in good faith.

Furthermore, the only claim relative to the Quinn Estate involves its own wrongful-death claim. As indicated in our analysis of the good-faith issue, the contribution claims relative to Jamie Quinn's fault in this horrible accident are simply not the same as the Quinn Estate's claims for Jamie Quinn's wrongful death. This is true even though the same parties are involved and the causes of action relate to the same fatal motor vehicle accident. The fact that a case may come before this court on another occasion does not support the judicial-economy claims of Waterloo and Inman. This case could come before us not only on the Quinn Estate's wrongful-death claim but also on the other plaintiffs' claims against the nonsettling defendants. Those possible facts do not make the trial court's order at issue any less final. An order approving a settlement constitutes a final disposition as to a definite and separate part of the litigation and is appealable when the trial court makes a Rule 304(a) finding. *Granville Beach Condominium Ass'n v. Granville Beach Condominiums, Inc.*, 227 Ill. App. 3d 715, 720, 592 N.E.2d 160, 162-63 (1992).

The dismissal of the contribution claims and the plaintiffs' claims against the Quinn Estate is final, and the entry of a Rule 304(a) finding in the order was not inappropriate.

For the foregoing reasons, we affirm the judgment of the circuit court of Monroe County.

Affirmed.

RARICK and CHAPMAN,[1] JJ., concur.

---

[1]Justice Charles Chapman participated in oral argument. Justice Melissa Chapman was later substituted on the panel and has read the briefs and listened to the audiotape of oral argument.