ANNA SKAGGS, Plaintiff-Appellee, v. SENIOR SERVICES OF CENTRAL ILLINOIS, INC., Defendant-Appellant and Counterplaintiff-Appellant (Ushman Communications Company, Defendant; Help at Home, Inc., Defendant-Appellee and Counterdefendant-Appellee; and Gwen Alexander, Counterdefendant).

Fourth District No. 4—04—0268

Argued November 9, 2004.—Opinion filed January 27, 2005.—Rehearing denied March 18, 2005.

1122

James W. Springer (argued), of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for appellant.

Grady E. Holley (argued), of Holley & Rosen, of Springfield, for appellee Anna Skaggs.

PRESIDING JUSTICE COOK delivered the opinion of the court:

The circuit court entered an order finding the settlement between plaintiff, Anna Skaggs, and defendant Help at Home, Inc. (Help at Home), to be in good faith within the meaning of the Illinois Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 through 5 (West 2002)). Defendant Senior Services of Central Illinois, Inc. (Senior Services), appeals. We affirm.

## I. BACKGROUND

Plaintiff Skaggs hired defendant Help at Home to take her to vote at a building occupied by defendant Senior Services. Help at Home's employee, Gwen Alexander, drove Skaggs to the building and parked the van near a depression in the parking lot. The parking lot abutted the lot of defendant Ushman Communications Company (Ushman). When Skaggs finished voting and attempted to get back into the van, she fell near the point where Senior Services' lot met the adjoining Ushman property. Skaggs broke both of her ankles. While undergoing rehabilitation for the injured ankles, she fell and fractured her hip.

Skaggs filed a complaint. Counts I and II alleged Senior Services negligently allowed the drop-off to be created, failed to warn of the dangerous condition, failed to provide for ramping, and maintained a condition of unreasonable risk on the premises. Count III claimed Ushman was negligent in failing to maintain its premises and in al-

lowing an unreasonably dangerous condition to develop. Count IV asserted Help at Home's agent negligently parked near the hole, failed to ensure the vehicle was parked at a safe location for exit and entry, and failed to provide a safe exit and entry. Upon Skaggs' motion for voluntary dismissal, count III against Ushman was dismissed with prejudice. In its answer, Senior Services asserted affirmative defenses of comparative fault on the part of Skaggs, Ushman, and other parties not presently before the court. Senior Services also filed a counterclaim against Ushman.

Before Skaggs filed her complaint, Help at Home filed a petition in bankruptcy. Upon a petition by Senior Services, the bankruptcy court granted it relief from the automatic stay. Senior Services then asserted its claim for contribution against Help at Home as a claim in the bankruptcy proceedings. In the circuit court, Senior Services filed a counterclaim against Help at Home and its employee, Gwen Alexander, seeking contribution and a reduction in fault should any finding of liability be made against Senior Services.

In the bankruptcy proceeding, Skaggs filed a $400,000 claim against Help at Home. Skaggs and Help at Home negotiated a resolution to Skaggs' claim in the bankruptcy proceeding, and the bankruptcy court entered a stipulation and order allowing Skaggs' claim as an unsecured claim in the amount of $100,000 with the stipulation that the order shall not prejudice Skaggs' ability to recover from any insurance coverage available to Help at Home to satisfy the alleged personal injury damages. The settlement further provided that any money actually received by Skaggs will be allowed as a credit against any liability that might be imposed upon Senior Services. As part of the settlement, Skaggs and Help at Home agreed to file a motion for a good-faith finding in state court. Skaggs' claim against Help at Home was released.

Skaggs and Help at Home filed a motion requesting the circuit court find their proposed settlement to be in good faith in accordance with the provisions of the Contribution Act (740 ILCS 100/0.01 through 5 (West 2002)) and bar any claim for contribution or any other claim by any tortfeasor against Help at Home. In the motion, Help at Home claimed it did not have liability insurance that would cover the incident by virtue of the fact that it was insured by Reliance Insurance Company, which was insolvent and not covered by the Illinois Guaranty Fund. The motion further stated that under the bankruptcy proceedings, the amount of money available for distribution to unsecured creditors was $50,000 to be distributed on a proportionate basis to the unsecured creditors based upon the value of their claims. The actual amount Skaggs would receive could not be

determined until the bankruptcy court allocated the specific amounts to the various unsecured creditors.

Senior Services opposed the motion for good-faith finding. Following a hearing, the circuit court entered an order finding the settlement to be in good faith within the meaning of the Contribution Act. The order authorized Skaggs to execute a release of any and all of Help at Home's liability for Skaggs' injuries; and it discharged any and all liability of Help at Home to any other joint tortfeasor, including Senior Services. The order further established that the amount Skaggs receives pursuant to the settlement shall operate as a credit against any judgment that may be entered against Senior Services.

## II. ANALYSIS

### A. "Good-Faith" Requirement

■ The Contribution Act establishes a right of contribution where "[two] or more persons are subject to liability in tort arising out of the same injury" to another person and limits that right to "a tortfeasor who has paid more than his pro rata share of the common liability." 740 ILCS 100/2(a), (b) (West 2002). The Act further provides that a plaintiff may release one or more persons liable in tort without discharging other tortfeasors, but such release will reduce "the recovery on any claim against the others to the extent of any amount stated in the release *** or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c) (West 2002). A settling tortfeasor is discharged from all liability for any contribution to another tortfeasor and is not entitled to recover contribution from any nonsettling tortfeasors. 740 ILCS 100/2(d), (e) (West 2002). The only limitation on the settlement provided in the Act is that the release be given "in good faith." 740 ILCS 100/2(c) (West 2002).

■ Initially, the settling parties have the burden of establishing that the settlement is in good faith by showing, at a minimum, that the agreement is legally valid and that the settlement is "fair and reasonable in light of the policies underlying the Contribution Act." *Johnson v. United Airlines*, 203 Ill. 2d 121, 132, 784 N.E.2d 812, 820 (2003). The Contribution Act promotes two policies: (1) encouraging equitable apportionment of damages according to relative fault and (2) encouraging tortfeasors to settle with injured plaintiffs. *In re Guardianship of Babb*, 162 Ill. 2d 153, 171, 642 N.E.2d 1195, 1203 (1994). Upon an initial showing of good faith, the nonsettling party must prove bad faith by a preponderance of the evidence. *Johnson*, 203 Ill. 2d at 132, 642 N.E.2d at 820.

■ The test for determining a good-faith settlement is a totality-of-the-circumstances test. *Dubina v. Mesirow Realty Development, Inc.*,

197 Ill. 2d 185, 191, 756 N.E.2d 836, 840 (2001). No single factor will be determinative. *Babb*, 162 Ill. 2d at 162, 642 N.E.2d at 1199. The trial court's determination of good faith will be upheld absent a showing of abuse of discretion. *Dubina*, 197 Ill. 2d at 191-92, 756 N.E.2d at 840.

Senior Services asserts that the Contribution Act requires that nonsettling parties be treated equitably. Also, because the exact amount Skaggs will receive is unknown, Senior Services claims the settlement cannot be found to be in good faith. Under the settlement, Senior Services claims it will pay a disproportionate amount in relation to its probable liability because Help at Home is principally at fault. Further, Senior Services argues that the trial court's finding did not adequately address the issue of liability insurance. Finally, if the settlement is approved and Help at Home dismissed as a defendant, Senior Services asserts it may not request the trier of fact to apportion liability by including Help at Home. This could jeopardize Senior Services' right under section 2—1117 of the Code of Civil Procedure (735 ILCS 5/2—1117 (West 2002)) to be only severally liable for damages other than medical expenses if it was less than 25% at fault.

As we discuss below, we do not agree that the Contribution Act requires that trial courts determine that the settlement *amount* is equitable. Also, the indefiniteness of the settlement amount does not constitute bad faith under these circumstances. Finally, we do not find that the liability-insurance issue affects this settlement's good-faith determination. It is the question of whether, after the settlement, Help at Home's fault may be considered in apportioning liability under section 2—1117 that creates an issue.

■ First, Senior Services cites many cases that purportedly establish that the settlement must treat nonsettling parties equitably. In each case, though, the court reviews more factors than just the allegedly disproportionate settlement. The test is a totality-of-the-circumstances test, and one factor is not determinative.

The Supreme Court of Illinois in *Babb* and *Dubina* determined the settlements were not in good faith under a totality-of-the-circumstances test. In *Babb*, the court looked at factors including the deceptive manner in which the settling parties obtained approval from the court, the misrepresentation of the terms of the settlement to the court, the absence of notification to the nonsettling parties, the inequitable terms, and, most significantly, the loan-receipt provision, which violated the terms of the Contribution Act. See *Babb*, 162 Ill. 2d 153, 642 N.E.2d 1195. A typical loan-receipt agreement involves the following arrangement:

"[T]he plaintiff received an interest-free loan (settlement monies)

from the settling tortfeasor, who was then dismissed from the plaintiff's tort action. Under the terms of the loan-receipt agreement, however, the plaintiff was obligated to repay the settlement monies received pursuant to the loan-receipt agreement to the settling tortfeasor out of any judgment or settlement that the plaintiff obtained from the other nonsettling tortfeasors. *** The settling tortfeasor obtained contribution indirectly, because any money that the nonsettling tortfeasors paid to the plaintiff was immediately used to repay the settling tortfeasor for the amount it loaned to the plaintiff pursuant to the loan-receipt agreement." *Babb*, 162 Ill. 2d at 168, 642 N.E.2d at 1202.

Loan agreements violate the terms of the Contribution Act because they allow a settling tortfeasor to indirectly recover contribution from a nonsettling tortfeasor and attempt to deprive the nonsettling tortfeasor of its statutory right to a setoff. *Babb*, 162 Ill. 2d at 172, 642 N.E.2d at 1204.

In *Dubina*, the crucial factor was that the portion of the settlement that allocated $4.5 million as payment for plaintiffs assigning their claims against the nonsettling defendants to the settling defendants effectively deprived the nonsettling defendants of their statutory right to a setoff. *Dubina*, 197 Ill. 2d at 195, 756 N.E.2d at 842. The court in *Dubina* regarded this settlement as collusive because the assignments allowed the settling defendants, "in the guise of plaintiffs, to indirectly recover contribution from [the nonsettling defendants]." *Dubina*, 197 Ill. 2d at 196, 756 N.E.2d at 842.

The small amount of the settlement alone will not establish bad faith. *Warsing v. Material Handling Services, Inc.*, 271 Ill. App. 3d 556, 561, 648 N.E.2d 1126, 1130 (1995). The court must consider all of the surrounding circumstances, not just the amount of the settlement. *Dubina*, 197 Ill. 2d at 191, 756 N.E.2d at 840.

■ Second, Senior Services' concern that the exact amount to be paid by Help at Home is unknown does not amount to bad faith. Because Help at Home filed for bankruptcy, any settlement had to be negotiated under bankruptcy procedures. Skaggs and Help at Home negotiated a concrete unsecured creditor's claim that entitles Skaggs to a right of cash distribution without having to litigate. While the exact amount Skaggs will actually receive is unknown, the bankruptcy court follows a procedure for determining the amount. Further, under Senior Services' reasoning, plaintiffs negotiating with defendants in the midst of bankruptcy proceedings would be precluded from settling if this court deemed settlements that included unsecured-creditor claims to be *per se* bad faith. In this case, the settling parties were restricted in arranging their settlement and should not be found to

have acted in bad faith simply for negotiating within the constrictions imposed by the bankruptcy proceeding.

■ Finally, as to the issue of liability insurance, Senior Services complains there may be coverage from a Traveler's Insurance policy covering Help at Home. Senior Services appeared to have been aware of the existence of Travelers' automobile policy before the hearing on the motion for a good-faith finding. Further, it is uncertain that Travelers would cover any of Help at Home's liability. The bankruptcy court's order and stipulation do not prevent Skaggs from recovering from any insurance coverage that Help at Home may have to cover the accident. Help at Home requested that Travelers participate in its defense in connection with the appeal, but Travelers moved for an order declaring it had no duty to defend or indemnify Help at Home. The chance that there may be some insurance coverage would not by itself establish that the trial court abused its discretion in determining that the settlement was in good faith.

■ The real issue in this case is the possibility that by their settlement, Help at Home and Skaggs destroyed Senior Services' right to have the trier of fact consider Help at Home's percentage of fault when determining Senior Services' liability under section 2—1117 of the Code of Civil Procedure (735 ILCS 5/2—1117 (West Supp. 2003)). Section 2—1117 provides that in cases such as these:

> "all defendants found liable are jointly and severally liable for the plaintiff's past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third[-]party defendant except the plaintiff's employer, shall be severally liable for all other damages." 735 ILCS 5/2—1117 (West Supp. 2003).

Prior to June 2003, this statute included the phrase "who could have been sued by the plaintiff" following "third[-]party defendant" instead of the phrase "except the plaintiff's employer." 735 ILCS 5/2—1117 (West 1994), amended by Pub. Act 93—10, § 5, eff. June 4, 2003 (2003 Ill. Laws 50). Under the former language, the Supreme Court of Illinois determined that a plaintiff's employer, even though immune from suit under the Workers' Compensation Act (820 ILCS 305/1 through 30 (West 2002)), was a "third-party defendant who could have been sued by the plaintiff" and whose liability should be considered in the division of fault under section 2—1117. *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 77, 783 N.E.2d 1024 (2002). The court interpreted this section to show that the "legislature intended the division of responsibility to include those people in the suit who might have been responsible for the plaintiff's injuries." *Unzicker*, 203

Ill. 2d at 78-79, 783 N.E.2d at 1033. After this decision, the legislature took out the language including any third-party defendant who "could have been sued by the plaintiff" and replaced it with "any third[-] party defendant except the plaintiff's employer." Pub. Act 93—10, § 5, eff. June 4, 2003 (2003 Ill. Laws 50).

Under the current language, there are two possible interpretations of section 2—1117. First, that section 2—1117 does not allow for a settling defendant dismissed from the case to be considered in apportioning liability. A trial court may consider the settling defendant as no longer a "defendant sued by the plaintiff." A second interpretation may be that the settling defendant had actually been sued, and the fact that the defendant settled does not prevent inclusion for purposes of section 2—1117.

If a settling defendant may not be included under section 2—1117, a plaintiff could sue two defendants, one who is primarily at fault but indigent and one who is minimally at fault but wealthy. By settling with the indigent defendant, the plaintiff could circumvent the application of section 2—1117, leaving the wealthy defendant, even though minimally liable, jointly liable for all damages because the settling defendant's portion of fault can no longer be considered. Such an arrangement, like the loan-receipt provision in *Babb* or the assignment in *Dubina*, would constitute bad faith and collusion as the parties to the settlement would be acting to deprive the nonsettling party of its statutory right to several liability for nonmedical expenses. Of course, if the nonsettling defendant is more than 25% at fault, there would be no problem with an otherwise "good-faith" settlement. The argument has been made that there is a possibility of increased gamesmanship where a defendant settles with a third-party defendant, that defendants can manipulate the defense or make deals with third-party defendants. E. Schiff, *Apportioning Liability in Third-Party Cases: Recent Issues*, 93 Ill. B.J. 38, 41 (2005). That same possibility would appear to exist where a plaintiff settles with a defendant, the situation in this case.

It would be premature to approve this settlement absent an interpretation of section 2—1117, as it is not clear in this case whether Senior Services is more than 25% at fault. If Senior Services is more than 25% at fault, then the settlement would appear to be in "good faith" regardless of our interpretation of section 2—1117 as Skaggs and Help at Home would not be destroying Senior Services' rights under section 2—1117. If Senior Services is less than 25% at fault though, Senior Services' rights under section 2—1117 would be jeopardized if there was a chance Help at Home's percentage of fault might not be considered for determining section 2—1117 liability. We

realize to require a trial court to conduct a full-blown pretrial hearing to apportion liability before making a good-faith determination would be nigh impossible and burdensome. By interpreting section 2—1117 to include settling defendants, such a requirement can be avoided.

The Supreme Court of Illinois recognized prior to the latest revision that "[t]he clear legislative intent behind section 2—1117 is that minimally responsible defendants should not have to pay entire damage awards." *Unzicker*, 203 Ill. 2d at 78, 783 N.E.2d at 1033. The revision to section 2—1117 excepts a plaintiff's employer from being considered in the apportioning of fault, but the legislative intent remains the same with respect to minimally responsible defendants. Forcing a minimally responsible defendant to shoulder the nonmedical expenses only because the more culpable defendant settled would allow plaintiffs to circumvent the purpose of the statute. In 1993, an Illinois appellate court suggested as follows:

> "[T]he rights of a nonsettling defendant under section 2—1117 'cannot be negated simply because another tortfeasor has settled with the plaintiff.' [Citation.] *** [E]ven where one tortfeasor has settled with the plaintiff, '[t]he jury should still be able to assess the defendant's relative culpability, and if the defendant's level of fault falls below the 25[%] threshold, its liability is several only and is not affected by the plaintiff's settlement with the other tortfeasor.' " *Alvarez v. Fred Hintze Construction*, 247 Ill. App. 3d 811, 818, 617 N.E.2d 821, 826 (1993), quoting E. Walsh & E. Doherty, *Section 2—1117: Several Liability's Effect on Settlement & Contribution*, 79 Ill. B.J. 122, 125 (1991).

■ Only by interpreting section 2—1117 to include settling defendants can section 2—1117 reinforce the policies of the Contribution Act. Including settling defendants in apportioning liability does not discourage settlements, but it certainly better promotes equitable apportionment of damages according to relative fault.

The plain language of the statute includes "defendants sued by the plaintiff." 735 ILCS 5/2—1117 (West Supp. 2003). Even though a defendant settles with a plaintiff and is dismissed from the case, that defendant does not lose its status as a defendant sued by the plaintiff. Therefore, we hold section 2—1117 requires the trier of fact to consider the percentage of fault of settling defendants. Since section 2—1117 allows the trier of fact to consider Help at Home's percentage of fault, the trial court did not abuse its discretion in finding a good-faith settlement.

## B. Motion To Amend the Record

■ As the material requested to be included in the amended record does not affect the decision of this court, we see no harm in granting the motion. Motion allowed.

1130

## III. CONCLUSION

For the reasons stated, we affirm the trial court's good-faith determination.

Affirmed.

MYERSCOUGH and KNECHT, JJ., concur.