THIRD DIVISION
MARCH 5, 2008

No. 1-07-1338

| | | |
|---|---|---|
| KATHERINE HEUPEL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 L 928 |
| | ) | |
| JORIE LYNN JENKINS, | ) | The Honorable |
| | ) | Richard J. Elrod, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

This appeal arises as a result of the jury's verdict in favor of defendant, Jorie Lynn Jenkins, and against plaintiff, Katherine Heupel, in the underlying negligence action. On appeal, plaintiff contends that: (1) the trial court erred in denying her motion for judgment notwithstanding the verdict or, in the alternative, a new trial; (2) defense counsel's improper closing arguments were prejudicial; (3) the trial court erred in issuing the long form of Illinois Pattern Jury Instructions, Civil, No. 12.04 (2000) (hereinafter IPI Civil (2000) No. 12.04) to the jury; and (4) the trial court erred in including the name of a nondefendant on one of the jury verdict forms.

The evidence adduced at trial demonstrated that, on September 7, 2004, plaintiff was walking southbound on the sidewalk, nearing the intersection of 55th Street and Woodlawn Avenue in Chicago, Illinois. At the same time, defendant was driving westbound on 55th Street and Nivethitha Murugeson was driving eastbound on 55th Street. While the traffic light remained green, Murugeson stopped in the left-turn lane and waited for the traffic to clear as defendant also approached the intersection. The parties dispute the exact timing of their subsequent actions in

relation to the traffic light changing from yellow to red; however, it is clear that defendant and Murugeson collided in the intersection. Defendant's car then spun onto the adjacent sidewalk, striking plaintiff and pinning her against a building on the street corner. Plaintiff suffered extensive injuries as a result. Prior to instituting the underlying action, plaintiff entered an agreed settlement with Murugeson for $100,000, the amount of Murugeson's insurance coverage. Plaintiff subsequently filed suit against defendant.

Prior to trial, defendant filed a motion seeking leave to file a third-party action against Murugeson. The parties filed briefs on the issue and a hearing was held thereafter. Ultimately, the trial court denied defendant's motion; however, the court informed the parties that Murugeson would be named on the jury verdict form at the conclusion of trial on the basis that no third-party action need be filed in order for the jury to measure the negligence of a prior settling individual.

At trial, Limin Teh testified that she was walking north toward the intersection at issue when the accident occurred. Teh recalled that she was on the sidewalk of Woodlawn Avenue, approximately 20 feet south of the intersection, when she noticed that the traffic light for 55th Street was going to be turning red; thus, she would soon have the light in her favor to cross the street. As a result, Teh quickened her pace. While she briskly approached the intersection, Teh noticed a girl, who she later learned was plaintiff, standing on the northwest corner of the intersection. Teh also noticed a car facing east on 55th Street waiting to turn left onto Woodlawn Avenue. Teh continued toward the intersection and then saw "two cars hit each other." She testified that "[o]ne car that was hit spun around about 270 degrees and careened off a little bit and hit a trash can *** then went on the curb and went on the front steps of the Starbucks." Teh

described the spinning car as "going pretty fast." Teh then heard plaintiff screaming for help from underneath the car.

On cross-examination, Teh testified that the initial impact occurred a little over one second after the 55th Street traffic light turned yellow. Teh admitted that she never saw defendant's car prior to the impact and that she did not actually see the impact occur. Rather, she heard the impact and then looked up to see the aftermath. In particular, when Teh looked toward the intersection after hearing the crash, she saw defendant's car start spinning in a counterclockwise direction.

Officer Bernard Wysinger testified that, when he arrived on the scene of the accident, he observed defendant's car on the curb, resting against a building. Officer Wysinger noticed that defendant's car sustained damage to its front left quarter panel and the other car, Murugeson's vehicle, had damage to its front. Officer Wysinger interviewed both drivers regarding the circumstances of the accident. Defendant told him that she entered the intersection when the traffic light turned yellow. Based on his investigation, Officer Wysinger concluded that Murugeson's car struck defendant's car; however, he clarified that his job in investigating the accident was limited to determining the point of impact between the two vehicles and not to assess fault.

Defendant testified that she recalled checking her speedometer at least three times in the three blocks prior to the intersection at issue and she was traveling 30 miles per hour. As she approached the intersection, defendant recognized that the pedestrian signals were flashing, indicating that the traffic light for 55th Street was about to change from green; therefore, she

began to slow down so that she would be able to stop her car if the light turned to yellow before she reached the intersection. Defendant recalled that she was approximately one half of a block away from the intersection when she began decelerating to approximately 25 miles per hour and first noticed Murugeson's vehicle. Defendant continued toward the intersection and, when she reached the easternmost crosswalk, the light turned yellow. At that time, she recalled looking at her speedometer and it read 25 miles per hour; however, defendant stated that she sped up once she entered the intersection. Defendant approximated that she was traveling 30 miles per hour at the time of the crash based upon the belief that she could not have accelerated more than five miles per hour in the time between when she first approached the easternmost crosswalk and when the accident occurred, approximately three-quarters of the distance into the intersection. Defendant posited that, at the time of the crash, Murugeson's car was stopped in the intersection with its wheels turned toward the left.

When the front of Murugeson's car struck the left quarter panel of defendant's car, her air bag deployed, releasing heat and white smoke, and blocked her view out of the front window. At the point of impact, defendant recalled "slamming" on her brakes; however, she never sounded her horn or attempted to avoid the accident because she did not think there was any danger of the accident occurring. Defendant could not recall what transpired in the time between the initial impact and when her car came to a rest with plaintiff pinned against the building. She did not remember her car spinning. Defendant testified that she returned to the scene of the accident a few days later and saw that a garbage can had been damaged and that some of the building's cinder blocks were chipped.

Murugeson testified that she initially waited in the left-turn lane at the intersection of 55th and Woodlawn Avenue because her traffic light was red. When the light for 55th Street turned green, Murugeson proceeded into the intersection in order to turn left onto Woodlawn Avenue once the oncoming, westbound traffic cleared. Murugeson recalled seeing defendant's car as it approached the intersection, which she described as moving "fast." Murugeson then noticed that defendant's car began to slow as the traffic light changed from yellow to red. Murugeson thought defendant had enough time to stop; however, defendant's car was the last car to proceed through the intersection. Murugeson recalled that she was still stopped in the middle of the intersection with her wheels turned to the left when defendant struck the front, left corner of her car. The impact caused Murugeson's car to rotate and it ultimately came to a rest pointed northwest. After the impact, Murugeson got out of her car and assessed the damage. She noticed that her front bumper was loose and hanging.

On cross-examination, Murugeson admitted that she could not approximate defendant's speed as defendant traveled through the intersection. Murugeson further admitted that, at the time of impact, she did not have her foot on the brake pedal.

The jury ultimately found in favor of defendant and against plaintiff.

Plaintiff first contends that the trial court erred in denying her motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Specifically, plaintiff argues that the evidence presented "questions of law that [defendant] was negligent" requiring a judgment notwithstanding the jury verdict. In the alternative, plaintiff argues that the trial court abused its discretion in failing to grant her a new trial when the manifest weight of the evidence did not

1-07-1338

support the jury's verdict. Defendant responds that the evidence sufficiently refuted plaintiff's claim that defendant was negligent and that her negligence proximately caused plaintiff's injuries. Moreover, defendant argues that the jury properly weighed the evidence and resolved questions of fact based thereon.

A motion for judgment notwithstanding the verdict should be granted only when all of the evidence, viewed in a light most favorable to the nonmovant, so overwhelmingly favors the moving party that no contrary verdict could ever stand based on that evidence. Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d 494, 510 (1967); Wiker v. Pieprzyca-Berkes, 314 Ill. App. 3d 421, 425 (2000). This standard is very difficult to overcome and is applied under extremely limited circumstances. Alwin v. Village of Wheeling, 371 Ill. App. 3d 898, 911 (2007), citing Knauerhaze v. Nelson, 361 Ill. App. 3d 538, 548 (2005). In Maple v. Gustafson, 151 Ill. 2d 445 (1992), our supreme court further averred:

"A trial court cannot reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions, or because the court feels that other results are more reasonable. [Citations.] Likewise, the appellate court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way." Maple, 151 Ill. 2d at 452-53.

We review *de novo* whether a judgment notwithstanding the verdict should have been granted. Bergman v. Kelsey, 375 Ill. App. 3d 612, 621 (2007).

A motion for a new trial should only be granted when the verdict is against the manifest

weight of the evidence. Bergman, 375 Ill. App. 3d at 629. A verdict is against the manifest weight of the evidence when the opposite conclusion is clearly evident or when the jury's findings were unreasonable, arbitrary and not based upon any of the evidence. Bergman, 375 Ill. App. 3d at 629, citing York v. Rush-Presbyterian-St. Luke's Medical Center, 222 Ill. 2d 147, 179 (2006). We will not disturb the trial court's judgment unless it was an abuse of discretion. Wiker, 314 Ill. App. 3d at 425.

After reviewing the record before us, we conclude that a judgment notwithstanding the verdict was properly denied and that the trial court did not abuse its discretion in denying plaintiff's motion for a new trial. In order to succeed at trial based on a theory of negligence, plaintiff was required to demonstrate that defendant breached a duty of care and that defendant proximately caused plaintiff's injuries. See Wiker, 314 Ill. App. 3d at 425. Plaintiff argues that the evidence overwhelmingly demonstrated that defendant breached her duty to obey the traffic signals in violation of section 11-306 of the Illinois Vehicle Code (625 ILCS 5/11-306(b), (c) (West 2004)), which then lead to her collision with Murugeson and "caused and contributed" to her collision with plaintiff. As a result, defendant asserts that the jury's verdict was against the manifest weight of the evidence. We disagree.

The evidence at trial demonstrated that, according to defendant, she approached the intersection at 25 miles per hour; noticed Murugeson waiting to turn left; continued toward the intersection because her light remained green; sped up into the intersection after reaching and/or crossing the crosswalk because her light turned yellow; and was hit by Murugeson as Murugeson attempted to make a left turn. In contrast, Murugeson testified that she noticed defendant driving

quickly toward the intersection, but then observed defendant slow down. Murugeson thought defendant was going to stop as the traffic light changed from yellow to red; however, defendant proceeded into the intersection and struck Murugeson's car. Further testimony added that, after investigating the accident scene, Officer Wysinger concluded that Murugeson's car actually struck defendant's car.

Contrary to plaintiff's belief, determining whether defendant breached a duty of care was a question of fact and therefore the responsibility of the jury. See Boll v. Chicago Park District, 249 Ill. App. 3d 952, 958 (1991). " 'If reasonable minds may differ as to the inferences and conclusions to be drawn from these facts, then judgment [notwithstanding the verdict] should not be entered.' " Boll, 249 Ill. App. 3d at 958, quoting Lee v. Grand Trunk Western R.R. Co., 143 Ill. App. 3d 500, 510 (1986). Moreover, assessing comparative negligence becomes a question of law only when all reasonable minds would agree that a judgment notwithstanding the verdict is proper. Berner v. Kielnik, 117 Ill. App. 3d 419, 425 (1983). After reviewing the record in the case at bar and considering the conflicting testimony presented to the jury, we cannot say that, when the evidence is viewed in a light most favorable to defendant, it so overwhelmingly favors plaintiff that no contrary verdict could stand. The evidence clearly demonstrates that the events leading up to the collision were contested; therefore, we disagree with plaintiff's contention that defendant was negligent as a matter of law. Berner, 117 Ill. App. 3d at 426 ("[q]uestions on which reasonable men could arrive at different results should never be determined as a matter of law"). Further, we cannot say that the jury's verdict was reached in error. Accordingly, although there is no question that plaintiff suffered a horrible tragedy, we

1-07-1338

determine that a judgment notwithstanding the verdict should not have been entered and that the trial court's denial of plaintiff's motion for a new trial was not an abuse of discretion.

Plaintiff next contends that she was prejudiced by defense counsel's improper closing argument and therefore should be granted a new trial. Specifically, plaintiff argues that defense counsel inappropriately informed the jury that defendant would be personally responsible for paying damages to plaintiff. Defendant responds that plaintiff has waived review of this argument on appeal.

The comments at issue include defense counsel's statement that "plaintiff is here to get money from the defendant" and "plaintiff is asking you [the jury] to find [defendant] responsible for paying damages to the plaintiff." Moreover, defense counsel compared "verdict dollars" to everyday dollars, such as those spent on bills and groceries. These comments were made during defense counsel's closing argument without objection by plaintiff and are therefore waived. People v. Enoch, 122 Ill. 2d 176, 186 (1988); see Simmons v. Garces, 198 Ill. 2d 541, 567 (2002). Moreover, plaintiff fails to assert a well-reasoned argument supported by legal authority in violation of Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)). Krklus v. Stanley, 359 Ill. App. 3d 471, 488 (2005). Notwithstanding, we find that plaintiff's claim has no merit, especially where review of the record demonstrates that the trial judge advised the jury that counsel's closing comments were not evidence. Simmons, 198 Ill. 2d at 567.

Plaintiff additionally contends that the trial court erred in admitting and instructing the jury on the issue of sole proximate cause by submitting the long form of IPI Civil (2000) No. 12.04. Defendant responds that the long form of IPI Civil (2000) No. 12.04 was proper because

defendant claimed that a nonparty was the sole proximate cause of plaintiff's injuries.

IPI Civil (2000) No. 12.04 provides:

"More than one person may be to blame for causing an injury. If you decide that a [the] defendant[s] was [were] negligent and that his [their] negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame.

[However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant.]"

The Notes On Use section following the instruction posits that it "should be used only where negligence of a person who is not a party to the suit may have concurred or contributed to cause the occurrence," and further instructs that the second paragraph (long form) "should be used only where there is evidence tending to show that the sole proximate cause of the occurrence was the conduct of a third person." IPI Civil (2000) No. 12.04, Notes On Use at 57.

All parties have the right to have the jury clearly and fairly instructed; however, instructions not based on the evidence may not be given. Leonardi v. Loyola University of Chicago, 168 Ill. 2d 83, 100 (1995). It is within the trial court's sound discretion to determine what issues have been raised by the evidence. Leonardi, 168 Ill. 2d at 100.

In the case at bar, instructing the jury with the long form of IPI Civil (2000) No. 12.04 was proper where evidence was presented at trial that defendant was not the proximate cause of plaintiff's injuries; rather, testimony alleged that Murugeson's car turning into and colliding with

defendant's vehicle ultimately caused defendant to career into plaintiff. Consequently, defendant sufficiently alleged that Murugeson, a nonparty, was the sole proximate cause of plaintiff's injuries. See Leonardi, 168 Ill. 2d at 101 ("a general denial of any proximate cause is sufficient for the defendant to raise the defense" and the defendant is entitled to an instruction on that theory when sufficient evidence has been presented); Petre v. Kucich, 356 Ill. App. 3d 57, 66-67 (2005).

Plaintiff finally contends that the trial court erred by including Murugeson's name on one of the verdict forms submitted to the jury. Specifically, plaintiff argues that, because she and Murugeson settled their dispute outside court prior to plaintiff filing the underlying claim against defendant, Murugeson was never a defendant and therefore the court lacked jurisdiction to apportion liability to Murugeson. Defendant responds that Murugeson was properly named on the jury verdict form as a nonparty and that plaintiff suffered no resulting prejudice.

In order to address this contention, we first consider the statute codifying joint and several liability and apportionment of fault. Section 2-1117 of the Code of Civil Procedure (Code) posits:

"Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant except the plaintiff's employer, shall be severally liable for all other [nonmedical] damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants except the plaintiff's employer, shall be jointly and severally liable for all other damages." 735 ILCS 5/2-1117 (West 2004).

1-07-1338

See Skaggs v. Senior Services of Central Illinois, Inc., 355 Ill. App. 3d 1120, 1127 (2005). The legislative intent supporting the statute is that minimally responsible tortfeasors should not be responsible for paying entire awards. Unzicker v. Kraft Food Ingredients Corp., 203 Ill. 2d 64, 78-79 (2002).

Courts, however, have debated the meaning of "defendants sued by the plaintiff" to determine whether the culpability of settling defendants should be assessed against that of all defendants. See Ready v. United/Goedecke Services, Inc., 367 Ill. App. 3d 272 (2006)[1] (and cases cited therein). In Blake v. Hy Ho Restaurant, Inc., 273 Ill. App. 3d 372 (1995), the Fifth District appellate court interpreted "defendants" and "any third party defendants" as only applying to those defendants who remain in the case when it is submitted to the fact finder. Blake, 273 Ill. App. 3d at 375-76.[2] However, in Skaggs, the Fourth District held that the name of a prior settling defendant must appear on the jury verdict form in order to apportion her relative fault because, despite having settled and being dismissed from the case, the prior settling defendant does not lose his status as a "defendant sued by the plaintiff." Skaggs, 355 Ill. App. 3d at 1129. Further, relying on Skaggs and the federal court's memorandum opinion in Dowe v. National R.R. Passenger Corp., No. 01-C-5808 (April 26, 2004) (memorandum opinion and order), which also

---

[1]Petition for leave to appeal was granted by the supreme court. Ready v. United/Goedecke Services, Inc., 222 Ill. 2d 600 (2006).

[2]The Blake court interpreted the preamended version of the statute; however, the amendments do not affect the outcome of the instant case. See Skaggs, 355 Ill. App. 3d at 1127-28 (explaining the amendments).

1-07-1338

interpreted section 2-1117 of the Code (735 ILCS 5/2-1117 (West 2004)), our court determined that fault is to be apportioned among all defendants sued by the plaintiff, no matter if a settlement is entered, because the remaining defendant's degree of fault should not be altered by a settling defendant. Ready, 367 Ill. App. 3d at 279.

Although the precise issue before this court is unique in that Murugeson was never a named defendant because plaintiff settled with Murugeson before she filed suit, we find that the legislative intent supporting section 2-1117 of the Code (735 ILCS 5/2-1117 (West 2004)) and the cases interpreting the statute apply equally to the instant case, especially in light of the events leading to the trial court's determination that Murugeson was to be named on the jury verdict form. Approximately one month prior to the scheduled trial date, defendant requested leave to file a third-party contribution action, essentially requesting that Murugeson be named as a third-party defendant in order to protect defendant's rights pursuant to section 2-1117 of the Code (735 ILCS 5/2-1117 (West 2004)). The pretrial judge denied the motion, but determined that a third party need not be a named defendant in order for her relative fault to be considered by the jury. Reviewing that pretrial decision *de novo*, the trial judge agreed. In making that determination, the trial court highlighted the fact that the applicable jury verdict form (IPI Civil (2000) No. B45.03.A) provides for the apportionment of fault among all tortfeasors and further found that there was effectively no difference in Murugeson's status compared to a settled "defendant" simply because she settled before being named a defendant. Although we believe that defendant should have been granted leave to file her timely third-party contribution action,[3] we

_____

[3]We note that, at oral argument, plaintiff conceded that this issue would have been

-13-

ultimately agree that the timing of Murugeson's settlement should not have altered the jury's ability to apportion fault among all tortfeasors.

We find support for our determination in the principles of statutory construction. The primary goal of statutory construction is to ascertain and provide full effect to the intent of the legislature. Wade v. City of North Chicago Police Pension Board, 226 Ill. 2d 485, 509 (2007). "When a literal interpretation of a statutory term would lead to consequences that the legislature could not have contemplated and surely did not intend, this court will give the statutory language a reasonable interpretation." Wade, 226 Ill. 2d at 510. Moreover, when more than one construction of a statutory term exists, we should interpret the term reasonably to avoid absurd, unjust, unreasonable or inconvenient results. Alvarez v. Pappas, 374 Ill. App. 3d 39, 47 (2007). Combining the clear ambiguity of the statutory terms at issue, as demonstrated by the disputed interpretations discussed above, with the intent of the statute, we conclude that section 2-1117 of the Code applies to all tortfeasors no matter whether or when the plaintiff enters a settlement with any individual.

We further believe that the instant case involved exactly the type of potential gamesmanship that the statute intended to protect against. Plaintiff settled with Murugeson for the amount of her insurance coverage prior to bringing the underlying suit and then proceeded against defendant.

"If a settling defendant may not be included under section 2-1117, a plaintiff could sue two defendants, one who is primarily at fault but indigent and one who is minimally at

---

eliminated entirely if the court had granted defendant's requested leave.

-14-

fault but wealthy. By settling with the indigent defendant, the plaintiff could circumvent the application of section 2-1117, leaving the wealthy defendant, even though minimally liable, jointly liable for all the damages because the settling defendant's portion of the fault can no longer be considered." Skaggs, 355 Ill. App. 3d at 1128.

See Alvarez v. Fred Hintze Construction, 247 Ill. App. 3d 811, 818 (1993). Presumably in the case at bar, plaintiff settled with the "indigent" tortfeasor with the intent of insulating Murugeson from the issue of fault and proceeded against defendant, the "wealthy" tortfeasor, who the jury ultimately concluded was not liable. Moreover, unlike the driving concern in Blake, namely, that allowing the jury to consider settled tortfeasors in the fault allocation would expose them to the expense of discovery and "frustrate Illinois public policy favoring peaceful and voluntary resolutions of claims through settlement agreements" (Blake, 273 Ill. App. 3d at 374), plaintiff in the instant case essentially brought Murugeson into the case as a party when she called Murugeson as a witness to disprove defendant's "empty chair defense." Plaintiff's attempt to use Murugeson and the prior settlement as both a sword and a shield completely contradicts the spirit and purpose of section 2-1117 of the Code. Consequently, we conclude that naming Murugeson on the jury verdict form was proper.

Moreover, we distinguish the case cited by plaintiff, Zygmuntowicz v. Pepper Construction Co., 306 Ill. App. 3d 182 (1999). In Zygmuntowicz, our court determined that the trial court lacked jurisdiction to apportion liability between a general contractor and a property owner where the general contractor failed to file any contribution action against the property owner. Zygmuntowicz, 306 Ill. App. 3d at 185. The general contractor negotiated a settlement

with the injured employee and then later sought contribution for that award from the property owner. Zygmuntowicz, 306 Ill. App. 3d at 183. Contrarily, in the case at bar, plaintiff negotiated the settlement directly with Murugeson and Murugeson's name appearing on the verdict form did not alter the terms of that settlement. Rather, the jury was merely able to apportion relative fault among plaintiff, defendant and Murugeson. "Consideration of negligence of both parties and nonparties to an action is essential for determining liability commensurate with degree of total fault." Bofman v. Material Service Corp., 125 Ill. App. 3d 1053, 1064 (1984).

Because we determined that the trial court did not err in giving IPI Civil (2000) No. 12.04 to the jury and did not err in naming Murugeson on the jury verdict form, we need not address plaintiff's remaining contention that the combination of these alleged errors resulted in prejudice.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

QUINN, P.J., and CUNNINGHAM, J. concur.