GLORIA SAKELLARIADIS, Plaintiff-Appellant, v. STEVEN W. CAMPBELL *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—07—2845

Opinion filed May 29, 2009.

Timothy J. Touhy and Robert Williams, both of Touhy & Touhy, Ltd., of Chicago, for appellant.

Kathleen M. Ryan and Sara M. Davis, both of Ryan, Ryan & Landa, of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Gloria Sakellariadis appeals the amount of a money judgment awarded in her action against two defendants. Plaintiff's complaint alleged she was injured in two separate car accidents that occurred three months apart. The jury found both defendants responsible for an amount totalling approximately $518,000 in damages. Before the jury returned the verdict, one of the defendants settled for $150,000. Later, the trial court entered a judgment of one half the total verdict against the remaining defendant.

Plaintiff argues on appeal that the trial court erred in awarding plaintiff only 50% of the $518,000 verdict from the nonsettling defendant. Rather, the nonsettling defendant—based on a theory of joint and several liability—should have been responsible for the entire verdict, less only the $150,000 received from the settling defendant. For the reasons that follow, based primarily on the reasoning in *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 593 N.E.2d 522 (1992), *Yanan v. Ewing*, 205 Ill. App. 3d 96, 562 N.E.2d 1243 (1990), and section 433A of the Restatement (Second) of Torts (Restatement) (Restatement (Second) of Torts §433A (1965)), we reject plaintiff's theory of recovery and affirm the ruling of the trial court in all respects.

Plaintiff and defendant Steven W. Campbell had a car collision in July 2001. Plaintiff and defendant Bruce E. Walters had a car collision three months later in October 2001. Plaintiff and her husband Peter Sakellariadis filed a complaint against both defendants, alleging negligence in counts I and III and loss of consortium in counts II and IV. Plaintiff's husband later voluntarily dismissed the loss-of-consortium counts and is not a party to this appeal. Plaintiff alleged in

the remaining counts I and III that each defendant's negligence proximately caused her severe and permanent injuries. She alleged defendants were jointly and severally liable for the entire judgment. The trial court determined both defendants were negligent and held a jury trial solely on the question of damages.

The evidence at trial showed plaintiff was treated for injuries to her eyes, shoulder, spine and knee. Plaintiff testified the air bag in her car deployed in the first accident, causing burns to her eyes. She went to the hospital for her injuries, which included pain in her upper back. Plaintiff was treated and released. After the second accident, when her car's air bag again deployed, plaintiff first went home but later went to the hospital after experiencing leg and back pain. She later had surgery on her shoulder, knee, lower back and eyes. She said, "with all sincerity, it was the second accident that really killed me."

Plaintiff's treating ophthalmologist Dr. John Harry Fournier testified. After the first accident, plaintiff had significant trauma to both eyes, including alkali burns. Her injuries from the second accident were "superimposed" on the "delayed and defective" healing of injuries from the first accident. She had chronic iritis, infections and chemically induced dry eye. Minimal cataracts after the first accident progressed and required surgery after the second accident. Fournier said the accidents were "cumulative" and it would be "very difficult" to distinguish the role of each collision in plaintiff's injuries.

Dr. Spiros Stamelos, plaintiff's orthopedic surgeon, testified. He said he treated plaintiff for general muscle pain and pain in her neck, lower back, shoulder and knee. After the second accident he found evidence of earlier injuries that were "not very old." Stamelos performed surgery on plaintiff's knee, shoulder and lumbar spine. Plaintiff's knee injury could have been caused by a combination of major trauma and smaller injuries. Her shoulder injury was caused by trauma. Her spine injury could have been caused by trauma or by normal arthritic changes associated with aging. Her spinal exams before the accidents were normal. After the accidents she was "symptomatic" and "very disabled." Stamelos said it was difficult to quantify plaintiff's injuries because "she had two recent accidents" and "everything is sort of blended together."

Dr. Kevin F. Walsh, an orthopedic surgeon retained by Walters, testified through an evidence deposition read to the jury. Walsh said he reviewed plaintiff's medical records from before and after the accidents and found no evidence of permanent injuries from the accidents.

Dr. Dimitri Perros, an ophthalmologist who performed cataract surgery on plaintiff's eyes after the accidents, also testified through an

evidence deposition read to the jury. He said the cataract surgery was unrelated to the accidents and he saw no evidence of trauma to her eyes.

In the jury instruction conference, Walters' counsel argued defendants were consecutive and not concurrent tortfeasors. Counsel maintained there were two separate accidents and the court should tender to the jury a separate verdict form for each accident. Plaintiff's counsel argued plaintiff's injuries were "indivisible." The trial court called the action a "novel" case, noting plaintiff had preexisting conditions before the first accident. The trial court observed that after the first accident, plaintiff still had the original preexisting conditions plus injuries from the first accident that had become preexisting conditions. The alleged injuries in the second accident were added to these preexisting conditions. The court found no court opinions or pattern jury instructions that pertained to this set of facts.

The trial court tendered to the jury the verdict form proposed by plaintiff. The form required jurors to assign monetary amounts and percentages of responsibility to each defendant in 14 categories of past or future injuries. For example, one category was "the reasonable expense of the medical care, treatment and services received for back surgery." To the right of this category was a blank for the jury to fill in a dollar amount. To the right of this were two blanks for the jury to fill in percentages of responsibility for Campbell and Walters. Walters' counsel objected to the verdict form, arguing it provided no option for finding Walters not guilty. The trial court tendered the form and instructed the jury: "If you find that both defendants proximately caused the damages in a particular category, you must place a percentage for each defendant, the sum of which must total 100 percent."

While the jury deliberated but before it reached a verdict, plaintiff entered into a settlement agreement with Campbell for $150,000. On plaintiff's motion, the trial court found the settlement to be in good faith. The court noted that despite plaintiff's settlement with Campbell, plaintiff's claims against Walters remained pending.

The jury returned an itemized verdict of approximately $518,000, attributing 50% of the liability to each defendant. The jury award included $200,000 for past and future pain and suffering, $102,000 for the reasonable expense of future medical care and $100,000 for future disability. The jury awarded lesser amounts for past and future back surgery, future neck surgery and other past medical care.

The trial court then entered its judgment against Walters for 50% of the jury verdict. The court concluded that plaintiff had consolidated two separate, distinct torts into a single complaint "for purposes of judicial expediency." The court further concluded that the jury had

determined which accident caused which injuries and had apportioned the damages accordingly.

The trial court denied plaintiff's motions for a new trial or a modification of the judgment. The court declined plaintiff's request for a finding on whether plaintiff's injuries were divisible or indivisible. The trial court then held a hearing on plaintiff's motion to adjudicate liens. The court adjudicated, reduced and extinguished certain liens, relying on the amount of the judgment.

■ The disposition of the liens is not an issue in this appeal, but Walters argues that plaintiff affirmatively represented to lienholders that she would accept the judgment and this representation precludes her from challenging the judgment on appeal. Walters relies on the doctrines of invited error, waiver and judicial estoppel to argue that plaintiff's challenge to the judgment is barred. Each of these doctrines prevents a party from taking one position at trial and a different position on appeal. Walters relies on *Torres v. Midwest Development Co.*, 383 Ill. App. 3d 20, 31, 889 N.E.2d 654 (2008) (the doctrine of invited error prohibits a party from taking one course of action at trial and then contending on appeal that the course was erroneous); *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550, 675 N.E.2d 647 (1996) ("Judicial estoppel provides that a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding"); and *In re Detention of Swope*, 213 Ill. 2d 210, 217, 821 N.E.2d 283 (2004) (the rule of invited error provides: "a party cannot complain of error which that party induced the court to make or to which that party consented").

Walters has not provided in his brief specific citations to the record showing plaintiff's affirmative representation in the lien proceedings that she would not challenge the judgment on appeal. To the contrary, the record contains plaintiff's memorandum of law dated more than three months before the adjudication of the liens, arguing that the judgment should have been calculated based on joint and several liability. The trial court was on notice when the liens were adjudicated that plaintiff intended to challenge the judgment. We do not believe the doctrine of invited error, waiver or estoppel bar this appeal. Plaintiff did not affirmatively take a position in the lien proceedings that conflicts with her position on appeal.

Walters also argues that plaintiff waived her right to challenge the judgment by tendering the verdict form that produced the result of which she now complains. The doctrine of waiver is an admonishment to the parties, not a limitation on this court. *Schutzenhofer v. Granite City Steel Co.*, 93 Ill. 2d 208, 210-11, 443 N.E.2d 563 (1982). We decline to resolve this substantive question solely on the basis of waiver. *Bank of Pawnee v. Joslin*, 166 Ill. App. 3d 927, 936, 521 N.E.2d 1177 (1988).

Plaintiff argues she should have received the entire jury verdict from Walter, minus only $150,000 for Campbell's settlement, because each defendant was jointly and severally liable for the entire verdict. She maintains defendants were successive or joint tortfeasors who caused her indivisible injuries.

We will reverse a trial court's judgment only if it is against the manifest weight of the evidence. *Murphy v. Murphy*, 31 Ill. App. 3d 321, 337, 334 N.E.2d 779 (1975). A judgment is against the manifest weight of the evidence if: (1) the opposite conclusion is apparent; or (2) the findings appear unreasonable, arbitrary or not based on the evidence. *Bazydlo v. Volant*, 164 Ill. 2d 207, 215, 647 N.E.2d 273 (1995).

■ We first consider whether the evidence supports plaintiff's contention that defendants were joint tortfeasors who were jointly and severally liable for the entire amount of the verdict. "The common law doctrine of joint and several liability holds joint tortfeasors responsible for the plaintiff's entire injury, allowing plaintiff to pursue all, some, or one of the tortfeasors responsible for his injury for the full amount of the damages." *Coney v. J.L.G. Industries, Inc.*, 97 Ill. 2d 104, 119-20, 454 N.E.2d 197 (1983). "Where two or more persons, under circumstances creating primary accountability, directly produce a single, indivisible injury by their concurrent negligence, they are jointly and severally liable, even though there is no common duty, common design or concerted action." *Storen v. City of Chicago*, 373 Ill. 530, 533, 27 N.E.2d 53 (1940).

The existence of a single, indivisible injury is necessary to establish that multiple defendants are jointly and severally liable. *Board of Trustees of Community College District No. 508, County of Cook v. Coopers & Lybrand*, 208 Ill. 2d 259, 280-82, 803 N.E.2d 460 (2003) (two auditing firms were jointly and severally liable for damages where a college board's precipitous investment losses could not be attributed separately to each firm); *Padgett v. A&M Insulation Co.*, 266 Ill. App. 3d 320, 321-23, 640 N.E.2d 21 (1994) (the defendant asbestos manufacturers were jointly and severally liable to the plaintiff whose asbestosis was attributable to exposure to asbestos products at different times and places); *Oakes v. General Motors Corp.*, 257 Ill. App. 3d 10, 21, 628 N.E.2d 341 (1993) (the plaintiff's quadriplegia was a single indivisible injury proximately caused by the defectively designed seating system installed by the defendant car manufacturer and by the negligence of the defendant who drove his truck into the plaintiff's car); *Burke*, 148 Ill. 2d at 439 (the plaintiff's quadriplegia was a single indivisible injury attributable to the negligence of the defendant liquor store employee and the defendant City of Chicago police officers whose separate actions caused the plaintiff to strike his head).

■ *Burke* is a seminal case on indivisible injury and joint liability. *Burke*, 148 Ill. 2d 429. "[W]here defendants, albeit sharing no common purpose or duty, and failing to act in concert, nevertheless acted concurrently to produce an *indivisible* injury to the plaintiff, courts found them to be joint tortfeasors." (Emphasis in original.) *Burke*, 148 Ill. 2d at 438. The court in *Burke* adopted the test of jointness in section 433A of the Restatement, which provides that damages are to be apportioned among two or more causes under these limited circumstances: (a) when each injury is distinct from the other injuries; or (b) when there is a reasonable way of deciding each tortfeasor's contribution to a single harm. Restatement (Second) of Torts §433A(1) (1965); *Burke*, 148 Ill. 2d at 438-39. An injury cannot be apportioned among two or more tortfeasors unless it fits into category (a) or (b). Restatement (Second) of Torts §433A(2) (1965).

The explanatory notes to this section of the Restatement recognize that certain kinds of harm cannot be divided in a logical, reasonable or practical way. Restatement (Second) of Torts §433A, Explanatory Notes, Comment *i*, at 439-40 (1965). Most personal injuries are "single and indivisible." Restatement (Second) of Torts §433A, Explanatory Notes, Comment *i*, at 439-40 (1965). "Where two or more causes combine to produce such a single result, *** the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm." Restatement (Second) of Torts §433A, Explanatory Notes, Comment *i*, at 439-40 (1965).

On the other hand, the Restatement acknowledges that one defendant should not be liable for the distinct harm inflicted by another defendant merely because it would be *difficult* to apportion the damages. Restatement (Second) of Torts §433A, Explanatory Notes, Comment *b*, at 435 (1965). Types of harm that may be difficult to apportion include pain and suffering or medical expenses resulting from two wounds. But despite the difficulty, the Restatement explains, it is possible to make a "rough estimate" to fairly apportion such damages. Restatement (Second) of Torts §433A(1), Explanatory Notes, Comment *b*, at 435 (1965).

If a plaintiff's injuries can be apportioned among multiple tortfeasors, then the tortfeasors are not jointly and severally liable. *Gertz v. Campbell*, 55 Ill. 2d 84, 89, 302 N.E.2d 40 (1973) (a doctor whose malpractice required the amputation of a pedestrian's leg was not jointly and severally liable for the negligence of the motorist whose car struck the pedestrian and broke his leg where the injuries occurred at different times); *Patton v. Carbondale Clinic*, 161 Ill. 2d 357, 374, 641 N.E.2d 427 (1994) (the defendants were not joint tortfeasors where

the plaintiff suffered two distinct injuries: the first from a car accident and the second from a doctor's malpractice in treating her injuries).

A plaintiff's allegation that she was injured twice in the same part of her body will not transform two injuries into one. *Yanan*, 205 Ill. App. 3d at 100. "Where a party negligently aggravates a preexisting injury caused by another's negligence, he has committed a tort that is separate and distinct from the tort committed by the first wrongdoer [citation], and the injuries inflicted by each are separate and distinct injuries [citation]." *Yanan*, 205 Ill. App. 3d at 101. "[I]t is the aggravation, the change in the nature of the injury or the increase in the pain, as distinguished from the original injury, for which [the second driver] is liable." *Yanan*, 205 Ill. App. 3d at 101.

In *Yanan*, the plaintiff suffered injuries to the same parts of her body in two separate and unrelated car accidents occurring more than four months apart. *Yanan*, 205 Ill. App. 3d at 97. The plaintiff claimed her injuries were indivisible because the second accident aggravated her injuries from the first accident. *Yanan*, 205 Ill. App. 3d at 97. She said she could not apportion the pain, suffering, medical expenses and permanent physical injuries between the two accidents. *Yanan*, 205 Ill. App. 3d at 97. This court concluded the plaintiff had not suffered a single indivisible injury. *Yanan*, 205 Ill. App. 3d at 101. "Clearly, if [the] plaintiff had been injured in different parts of the body in the two accidents, there could be no claim that she suffered one indivisible injury." *Yanan*, 205 Ill. App. 3d at 101.

■ The rationale in *Yanan* is applicable to the analysis here. Plaintiff alleged she suffered injuries in each accident. The testimony of Drs. Fournier and Stamelos supported the conclusion that the injuries in the first accident were aggravated by the second accident. The jury chose to believe these doctors rather than Drs. Walsh and Perros, who opined that plaintiff did not receive lasting injuries from the accidents. As explained in *Yanan*, 205 Ill. App. 3d at 101, the fact that plaintiff was injured twice in the same parts of her body does not make the injuries indivisible. The jury here was able to reach at least a "rough estimate" to fairly apportion the damages. See Restatement (Second) of Torts §433A(1), Explanatory Notes, Comment *b*, at 435 (1965). The jury's verdict attributing 50% of the liability for plaintiff's injuries to each defendant was not against the manifest weight of the evidence.

Nor did the trial court err in concluding that plaintiff had combined two separate causes of action in a single complaint. This court found that two actions for separate injuries were properly joined into a single trial under similar circumstances in *Schwartz v. Swan*, 63 Ill. App. 2d 148, 157-58, 211 N.E.2d 122 (1965). There, as here, the

plaintiff suffered injuries to her head, neck, shoulder, arms and back in a car collision. Another car collision 10 days later caused injuries to the same body parts. The plaintiff did not allege the extent to which each accident contributed to her injuries but claimed only that the injuries from the first accident were aggravated by the second accident. *Schwartz*, 63 Ill. App. 2d at 151-52. This court determined that the medical evidence justified the joinder of the two actions for a single trial. *Schwartz*, 63 Ill. App. 2d at 160. It is the province of the fact finder to determine the extent to which each collision contributed to the nature and severity of the plaintiff's injuries. *Schwartz*, 63 Ill. App. 2d at 157-58. "The fact that it might be difficult, under these circumstances to establish the exact proportion of injury caused by each occurrence, is not sufficient reason to deprive plaintiff of the substantial right of a proper evaluation of her damages. To hold otherwise would require plaintiff to prosecute her claim in separate trials, in each of which the defense would [argue] the uncertainty of the injuries resulting from each occurrence." *Schwartz*, 63 Ill. App. 2d at 158.

Here, as in *Schwartz*, the jury apportioned the injuries caused by each accident. The jury's apportionment comported with the evidence. Also as in *Schwartz*, the medical evidence here pertained to plaintiff's injuries from both accidents. As the trial court stated here, it was judicially expedient to combine the causes in one trial. This allowed "a proper evaluation of her damages." *Schwartz*, 63 Ill. App. 2d at 158.

Finally, plaintiff argues that the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/3 (West 2006)) supports her claim that Walters should pay the difference between Campbell's settlement and the full jury verdict. But plaintiff has failed to comply with the requirements of Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)) in that she did not elaborate on this argument in her brief or cite relevant, persuasive authority to support her theory that the Contribution Act is outcome determinative. The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)), resulting in waiver. *Heupel v. Jenkins*, 379 Ill. App. 3d 893, 900, 884 N.E.2d 1263 (2008).

Waiver aside, the Contribution Act generally does not come into play if the plaintiff collects from the defendants in accordance with the jury's assessment of their respective culpabilities. *Lilly v. Marcal Rope & Rigging, Inc.*, 289 Ill. App. 3d 1105, 1110, 682 N.E.2d 481 (1997), *abrogated on other grounds in Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 71-79, 783 N.E.2d 1024 (2002). "[I]t is only when the plaintiff collects the judgment in a manner

inconsistent with the jury's determination of responsibility under the Contribution Act that any action under it is necessary." *Lilly*, 289 Ill. App. 3d at 1110-11. Accord *Truszewski v. Outboard Motor Marine Corp.*, 292 Ill. App. 3d 558, 561, 685 N.E.2d 992 (1997). "[The Contribution Act] provides a remedy for an entity that has paid more than its *pro rata* share of the common liability by allowing it to seek contribution from a fellow joint tortfeasor who has not paid his *pro rata* share of the common liability." *Truszewski*, 292 Ill. App. 3d at 561.

Here, Walters paid 50% of the jury verdict which was his *pro rata* share. The Contribution Act does not come into play.

We affirm the judgment of the circuit court for these reasons: (1) plaintiff's claims on appeal are not subject to waiver; (2) the trial court's conclusion that plaintiff's injuries were separable was not against the manifest weight of the evidence; (3) defendants were not jointly and severally liable for damages; (4) the difficulty of apportioning damages did not establish that plaintiff's injuries were indivisible; (5) the trial court correctly concluded that the complaint joined two separate torts into a single cause of action; and (6) the Contribution Act did not come into play because plaintiff collected 50% of the verdict from Walters in conformity with the jury's assessment of culpability.

Affirmed.

O'MALLEY, P.J., and McBRIDE, J., concur.