2020 IL App (1st) 190793-U
No. 1-19-0793

SECOND DIVISION
May 5, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| OZKO SIGN & LIGHTING COMPANY and ENGIN KOMU, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs and Counterdefendants-Appellants, | ) ) ) | No. 13 CH 21027 |
| v. | ) ) ) | The Honorable |
| OZKO SIGNS & LIGHTING SERVICES, INC., VOLKAN OZDEMIR, ALAN WAGNER, PHIL VALENZO, JS ACCOUNTING SOLUTIONS, INC., and ADEL MADBOULY, | ) ) ) ) ) | Peter Flynn, Judge Presiding. |
| Defendants, | ) ) ) | |
| (Ozko Signs & Lighting Services, Inc., Alan Wagner, and Phil Valenzo, Defendants-Appellees, Volkan Ozdemir, Defendant and Counterplaintiff-Appellee). | ) ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1 *Held:* Although the trial court provided an extensive discussion of the case in its oral ruling, the plaintiffs nevertheless failed to provide sufficient arguments with proper authority in support of their claims of error and did not provide a complete trial record on appeal, making it

impossible for the reviewing court to conduct a meaningful review of the plaintiffs' claims and, thus, it was presumed that the trial court did not err.

¶ 2    Following a bench trial on plaintiffs, Ozko Sign & Lighting Company's ("Ozko 1") and Engin Komu's, multi-count complaint and defendant Volkan Ozdemir's counterclaim, the trial court found against Ozko 1 and Komu on their first amended complaint and in favor of Ozdemir on his counterclaim, entering judgment in favor of Ozdemir in the amount of $53,053.59. On appeal, Komu and Ozko 1 argue that the trial court erred in delaying its decision following trial, failed to rule on all of their claims, ruled against the manifest weight of the evidence, and erred in granting relief on Ozdemir's counterclaim for specific performance.

¶ 3                                     BACKGROUND

¶ 4    For more than three years, Komu and Ozdemir operated Ozko 1 together. In 2013, however, Ozdemir decided that he would like to go his own way. The claims in this case arise out of the that breakup of the partnership between Komu and Ozdemir. After Ozdemir left the partnership, he, along with former Ozko 1 employees Alan Wagner and Phil Valenzo, formed and operated a separate lighting company, Ozko Signs & Lighting Services, Inc. ("Ozko 2"), which competed with Ozko 1. As part of the split, Volkan and Komu entered into a written agreement, which provided as follows:

"I, Volkan Ozdemir, am selling Engin Komu my shares of Ozko Sign & Lighting Co[.] for the following consideration:

- $78,672.59 in cash paid via check #104086

- Two trucks…received.

- Half of the anticipated accounts receivable valued as of 9/1/2013 at $153,540.44 to be paid as they are collected.

- Half the furniture and half the tools and on hand inventory…received.

If after the sale date the remaining shareholder must leave the office building currently leased by Ozko Sign & Lighting [C]o. th[e]n Volkan Ozdemir is entitled to half the deposit minus any expenses for moving out.

Volkan Ozdemir is responsible for paying off the existing line of credit minus $25,000, after which the line of credit shall be closed permanently as both shareholders are currently signers."

¶ 5   Ozko 1 and Komu's first amended complaint sounded in breach of fiduciary duty, deceptive trade practices, tortious interference with prospective business advantage, civil conspiracy, conversion, accounting, and tortious interference with contractual relations. All of their claims were based on allegations that Ozdemir, Ozko 2, Wagner, and Valenzo acted improperly in leaving Ozko 1, diverting customers from Ozko 1, destroying or misappropriating Ozko 1 files and/or tangible and intellectual property, and interfering with Ozko 1's relationships with its customers.[1]  Ozdemir's counterclaim alleged that Ozko 1 and Komu wrongfully failed to pay receivables and turn over furnitkure and tools owed to Ozdemir under the written buy-out agreement between him and Komu.

¶ 6   From the record before us, it appears that a bench trial on the first amended complaint and the counterclaim was held over the course of at least four days in March, 2015. The trial court's decision, however, was not issued until March, 2019. The record does not contain any explanation for the extraordinary delay in ruling.

---

[1] Defendants JS Accounting Solutions, Inc. and Adel Madbouly were not named in the first amended complaint, because they had previously settled with Ozko 1 and Komu and had been dismissed with prejudice.

¶ 7      In its written order, the trial court stated that it was entering judgment in favor of defendants on the counterclaim in the amount of $53,053.59. It also stated that Ozko 1 and Komu's claims for injunctive relief were denied, and that their claims for damages were denied for "failure of proof." The trial court also offered some explanation for its decisions on the oral record. In doing so, the trial court stated that it "reviewed all of the transcript[s] that the parties have, which is nearly all of the transcript[s], I think, my notes, the plaintiff's exhibits, the defendant's exhibits, [and] both sides' posttrial briefing." The trial court explained that Ozko 1 and Komu's claims essentially boiled down to claims of unfair competition. With respect to their claims for injunctive relief, the trial court found that any concerns regarding name confusion between Ozko 1 and Ozko 2 and any claims of damage caused by "email blasts" were belied by the evidence presented at trial, because both sides sent out "email blasts" and because any name confusion had disappeared. As for Ozko 1 and Komu's damages claims, the trial court found that Ozko 1 and Komu failed to prove that Ozko 2's, Ozdemir's, Wagner's, and Valenzo's actions caused customers to be diverted away from Ozko 1 and that Ozko 1 and Komu failed to prove that Ozko 2's, Ozdemir's, Wagner's, and Valenzo's actions were tortious. With respect Ozdemir's counterclaim, the trial court rejected his claim that Ozko 1 and Komu refused to turn over certain tools and furniture, but agreed that he was entitled to be paid receivables in accordance with the parties' agreement.

¶ 8      After the entry of the trial court's judgment, Ozko 1 and Komu timely instituted this appeal.

¶ 9                            ANALYSIS

¶ 10      On appeal, Ozko 1 and Komu argue that the trial court erred in not issuing its decision for four years after trial, failed to rule on all of their claims, ruled against the manifest weight of the

evidence on their tortious interference claims, and erred in granting relief on Ozdemir's counterclaim for specific performance where Ozdemir breached the parties' written agreement and entered into the agreement with unclean hands. Ozko 1 and Komu have failed to demonstrate reversible error on any of these contentions.

¶ 11    First, Ozko 1 and Komu contend that the trial court committed reversible error by delaying the issuance of its ruling until four years after the trial. They claim that despite numerous inquiries with the trial court's clerk over the years, no ruling was issued until their counsel sent an anonymous note to the Chief Judge. At that point, the trial court requested that the parties appear before it. According to Ozko 1 and Komu, during that appearance, the trial court asked the parties if they wanted the court to issue a ruling, and the parties answered in the affirmative. The trial court responded that it would "start" the process and asked for transcripts of the trial. Ozko 1 and Komu claim that, because of the delay, the trial transcripts were no longer available, resulting in the trial court issuing its ruling based on an incomplete record. As a result, they argue, "[i]t is clear that with the passage of time, the trial court was unable to issue a proper decision based on the evidence and testimony presented at the bench trial."

¶ 12    As an initial matter, Ozko 1 and Komu's argument alone on this issue is insufficient for us to afford them any relief. The above constitutes the entirety of their argument on this issue. Instead of explaining which missing transcripts made it impossible for the trial court to issue a proper decision and what difference the missing transcripts would have made, Ozko 1 and Komu simply make the conclusory statement that the trial court was incapable of rendering a proper decision. Such an argument is insufficient; accordingly, in this respect, Ozko 1 and Komu have arguably waived this contention. See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the

reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 13    Waiver aside, however, the lack of a complete record on appeal is fatal to Ozko 1 and Komu's claim. It is a well-established principle in appellate practice that the appellant bears the burden of presenting the reviewing court with a record on appeal that is sufficient to allow for meaningful review.

> "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."

*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 14    Here, the record on appeal is woefully inadequate. First, there is no official report of proceedings of the bench trial. Although there are unofficial transcripts attached to the parties' written closing arguments in the common law record, it is clear from reading them that they do not represent the entirety of the bench trial proceedings. In addition, the trial court's statement on the record while issuing its ruling indicated that the parties did not submit transcripts of the entire proceedings, and Ozko 1 and Komu acknowledge in their brief on appeal that transcripts

of all of the trial were not available. Finally, the record on appeal does not contain the trial exhibits.

¶ 15 Ozko 1 and Komu's contention that the trial court was unable to issue a proper decision due to the delay is based on the premise that the trial court's decision was incorrect. Without a complete trial record, however, we are unable to assess whether the trial court's decision was improper. Accordingly, we must presume the trial court's finding was in accord with the law and evidence. *Id.* We also observe that the record on appeal does not contain any transcript of the hearing at which Ozko 1 and Komu claim the trial court asked if they wanted a ruling and stated that it would begin the process of formulating one. Accordingly, we are unable to assess the veracity or accuracy of their representations of what occurred there or the trial court's reasons for failing to issue a decision sooner.

¶ 16 We are not unaware of the fact that Ozko 1 and Komu claim that some transcripts were unavailable due to the delay in the trial court's ruling. They have not, however, pointed to anything in the record demonstrating this to be the case. Moreover, Ozko 1 and Komu, as the appellants bore the burden of preserving and presenting a complete record, including the necessary transcripts. *Wyman-Gordon Co. v. Bernardi*, 135 Ill. App. 3d 685, 689 (1985) ("[I]t is the duty of every appellant in a reviewing court properly to preserve the record of proceedings for the information of the court."); *Belcher v. Spillman*, 28 Ill. App. 3d 973, 975 (1975) ("It has been consistently held by the reviewing courts of Illinois that it is the duty of any appellant *** who wishes to proceed in a reviewing court properly to preserve the entire record of proceedings so that the reviewing court may be fully informed of the issues before it."). Even assuming that the verbatim transcripts could no longer be obtained, Ozko 1 and Komu could and should have procured a bystander's report pursuant to Supreme Court Rule 323(c) (eff. July 1, 2017). Yet,

there is no indication in the record before us that they made any such attempt. The failure of counsel for Ozko 1 and Komu to preserve the transcripts of to seek a bystander's report is proving fatal to their claims on appeal.

¶ 17    Ozko 1 and Komu next contend that the trial court failed to rule on all of their claims. The record reveals, however, that the trial court did, in fact, rule on all of their claims in its written order. In that written order, the trial court explicitly stated that all of Ozko 1 and Komu's claims for injunctive relief were denied, and all of their claims for damages were denied for a lack of proof. Given that all of the claims in their first amended complaint asked either for injunctive relief or damages, these denials resolved all of Ozko 1 and Komu's claims. Although the trial court did not explain its decision to deny relief on each of their claims—choosing, instead, to address only some of them in its oral statements—it did rule on all of them, and Ozko 1 and Komu have not cited any authority for the proposition that the trial court was obligated to provide an explanation for its ruling on each count. See Ill. S. Ct. R. 341(h)(7) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis*, 391 Ill. App. 3d at 804 ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall Car Manufacturing Co.*, 145 Ill. App. 3d at 719 ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 18    In addition, the incomplete record on appeal makes it impossible for us to afford Ozko 1 and Komu any relief on this contention. They claim that the trial court could not have ruled on

all of their claims, because the trial court improperly condensed their claims into a personal claim of unfair competition between Komu and Ozdemir, did not consider the harm caused to Ozko 1, failed to recognize that Ozko 1 and Komu proved their claims of breach of fiduciary duty against the individual defendants, and otherwise failed to address the remaining claims in their complaint. Absent a complete record, however, we are unable to evaluate whether the trial court's assessment of their claims as essentially being one for unfair competition was inaccurate. Moreover, although Ozko 1 and Komu's first amended complaint identified a number of distinct claims, we are unable to determine whether they moved forward with presenting evidence on each of those independent claims or, as the trial court stated, essentially presented them as claims for unfair competition. In addition, we have no way of assessing the merits of Ozko 1 and Komu's contention that they proved their claims of breach of fiduciary duty against each of the individual defendants. Accordingly, even if the record did not clearly reflect that the trial court ruled on each claim, the lack of a complete record would require us to affirm.

¶ 19    Finally, with respect to Ozko 1 and Komu's last two contentions on appeal, we think it is abundantly apparent that a complete record of the testimony and other evidence presented at trial is essential to an assessment of whether the trial court's rulings on their complaint and Ozdemir's counterclaim were against the manifest weight of the evidence. Accordingly, once again, given the incomplete record, we must presume the trial court's findings in these respects were proper. *Foutch*, 99 Ill. 2d at 391-92.

¶ 20                                CONCLUSION

¶ 21    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 22    Affirmed.